IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| EDDY ADAMS, ) ) Petitioner, ) ) v. ) ) MICHAEL J. ASTRUE,[1] ) Commissioner of Social Security ) Administration, ) ) Respondent. ) _____) | Case No. CV 06-266-S-MHW **MEMORANDUM DECISION AND ORDER** |

## **Introduction**

Currently pending before the Court for its consideration is Petitioner Eddy Adams' ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed July 10, 2006. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, the administrative record (AR) and for the reasons that follow, will remand the matter to the Commissioner.

---

[1] Michael J. Astrue is substituted for his predecessor Jo Anne B. Barnhart as Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

**Memorandum Decision and Order - Page 1**

# I.
## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on December 27, 2004, alleging disability due to a combination of impairments including borderline intellectual functioning and severe back pain. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Hayward Reed held a hearing on July 11, 2005, taking testimony from Petitioner, vocational expert Jim Grissom, and medical expert Tom Atkins. (AR 316-367.) ALJ Reed issued a decision finding Petitioner not disabled on August 25, 2005. (AR 25-36.)

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner. (AR 6-8.) Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 51 years old. He has an eighth grade education and his past work experience includes work as an iron cutter and laborer.

# II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found Petitioner's

impairments are "severe" within the meaning of the Regulations. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Petitioner was unable to perform his past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. At step five, the ALJ determined that Petitioner had the residual functional capacity to perform a significant range of light work.

### III.
### Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

**Memorandum Decision and Order - Page 3**

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

## IV.
## Discussion

### A.    Listing 12.05(C) - Mental Retardation

Petitioner first argues that the ALJ's decision that he does not meet the requirements of Listing 12.05(C) is not supported by substantial evidence. Listing 12.05 describes the criteria to

**Memorandum Decision and Order - Page 4**

qualify as disabled on the basis of mental retardation. The Listing states:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied...C. A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. Listing 12.00(D)(6)(c) states that where "verbal, performance, and full scale IQs are provided in the Weschler series, we use the lowest of these in conjunction with 12.05."

Petitioner argues that he has presented sufficient evidence to show that he has a valid IQ score within the range required by 12.05(C), satisfying the first prong of the Listing. As to the second prong, Petitioner contends that it is satisfied as well because the ALJ determined that Petitioner had several impairments, including depression and back and hand problems, that were severe within the meaning of the regulations at step two. (AR 27.) As to the "capsule definition" in the introductory paragraph of the Listing requiring that there be "deficits in adaptive functioning initially manifested during the developmental period, *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22," Petitioner argues that there is a presumption that if a claimant presents an IQ score between 60 and 70 and there is no event occurring after the formative years likely to decrease an IQ score, the ALJ should assume the claimant's IQ score has remained fairly constant throughout his life. *See Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001).

The record shows that an IQ test was administered by Dr. Morgan on October 15, 2004.

Petitioner had a verbal IQ of 66, a performance IQ of 67 and a full scale IQ of 63.  (AR 209.)  Dr. Morgan noted that these test scores were a valid representation of Petitioner's current level of functioning.  (AR 209.)  The ALJ also found these scores to be valid.  (AR 28.)  Despite two references in the record to Petitioner being "above average" (AR 167-68) and "average to below average" in intelligence, the record shows that no other IQ tests were administered to Petitioner.

The record also demonstrates that Petitioner did not finish the eighth grade, can read and write but has trouble with math.  (AR 324-25.)  In the evaluation performed by Dr. Morgan, Petitioner estimated he has had over 100 employers since the age of 18.  He also indicated that he enlisted in the U.S. Army in 1973 but was discharged because he "couldn't adjust."  (AR 209.)  His past jobs were mainly in labor and maintenance positions.  (AR 113-20.)

After noting that Petitioner has a valid IQ score of between 60 and 70, the ALJ stated there was "nothing in the record to establish [his low IQ scores] were based upon mental retardation."  The ALJ then noted it was "not credible" that he was allowed enlist in the Army with IQ scores below 70 and pointed out that an examiner in 2003 found Petitioner to have "above average intelligence."  Next, the ALJ relied on the medical expert who testified at the hearing, Dr. Atkins, for the proposition that "the requirements of listing 12.05 are not met because the functional limitations under the B criteria are not met."  (AR 28.)  Lastly, the ALJ remarked that Listing 12.05 "requires the presence of limited intellectual functioning before the age of 22.  That requirement is not met in this case because there is no evidence of limited intellectual functioning before age 22."  (AR 28.)

First, the ALJ appears to have misconstrued Dr. Atkins' testimony.  In discussing Listing 12.05, Dr. Atkins stated that based on Petitioner's IQ scores, "[i]t can be inferred from the

**Memorandum Decision and Order - Page 6**

claimant's history with some medical certainty that the claimant has been functioning within that area of intellectual ability for some time, probably chronically." He did note, however, that "claimant chronically functioning at that level has been able to sustain work in the past." (AR 342.)  Next, he stated that Petitioner's IQ scores did meet the IQ portion of the Listing[2] and that he would then go on to evaluate the "B criteria"[3] of whether there was a functional limitation. (AR 343.)  Later in the hearing, Dr. Atkins testified "if it is found that his back problem posed a significant limitation...he would probably meet a 12.05C." (AR 351.)  The ALJ has misinterpreted the medical expert's testimony.  The medical expert seemed to imply that Petitioner would not meet Listing 12.05(D) (AR 342, 349-51) but that he would "probably" meet Listing 12.05(C) if his back problem was found to pose a significant limitation. (AR 351.)  The ALJ's statement that the medical expert testified a 12.05 Listing is not satisfied is not supported by substantial evidence in the record.

Next, the ALJ stated that there was nothing in the record that demonstrated Petitioner's low IQ was due to mental retardation. (AR 28.)  By making this statement, it appears the ALJ either is requiring a formal diagnosis of mental retardation or that the medical record must show that the low IQ scores were *not* caused by physical trauma.  First, there is nothing in the medical record that indicates any trauma to Petitioner that would have caused these low IQ scores.  This will be discussed further in the next paragraph.  Second, a formal diagnosis of mental retardation is not required in order to meet Listing 12.05.  *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir.

---

[2] Dr. Atkins was most likely referring to either Listing 12.05(C) or (D), both of which requires IQ scores between 60 and 70.

[3] The "B criteria" the medical expert refers to appears to be the second prong of Listing 12.05(D) which requires two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration.

**Memorandum Decision and Order - Page 7**

2006.) That court held the plain language of the Listing does not require a formal diagnosis of mental retardation. *Id*. The Commissioner argues that the 2000 regulations require a diagnosis of mental retardation as set out in American Psychiatric Association's Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) in order to satisfy the first prong of Listing 12.05(C). However, in 2002, regulations were promulgated that specifically rejected the adoption of the DSM-IV's mental retardation definition. Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. § 20018, 20022 (April 24, 2002). Given that the social security regulations have specifically rejected adopting the DSM-IV's definition of mental retardation, the reasoning set forth by the ALJ is without merit. In addition, the Eighth Circuit has held a formal diagnosis of mental retardation is not required by the regulations. While this decision is not binding on this Court, the reasoning is sound and very persuasive.

Lastly, the ALJ found that Listing 12.05 was not satisfied because there was "no evidence of limited intellectual functioning before age 22." Listing 12.05 does require that deficits in adaptive functioning manifest during the developmental period, *i.e.*, before age 22. However, this does not mean that Petitioner must present affirmative evidence of a low IQ prior to age 22. Instead, there is a presumption that IQ's remain fairly constant throughout one's life. *Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2006). Other circuits have held similarly. The Eighth Circuit has stated in several cases that a "person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning." *See Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006). *See also Luckey v. U.S. Dep't of Health & Human Servs.*, 890 F.2d 666 (4th Cir. 1989) (holding absence of an IQ test in developmental years did not preclude a finding of mental

**Memorandum Decision and Order - Page 8**

retardation predating age 22); *Markle v. Barnhart*, 324 F.3d 182 (3rd Cir. 2003) (noting there was no evidence of a traumatic event that might have induced mental retardation at a later stage of life). While the Ninth Circuit has not decided this precise issue, the Court is confident it would follow the reasoning of the other four Circuits.

Additionally, the Social Security Administration's regulations acknowledged that evidence of intelligence testing during the developmental years to meet the criteria of Listing 12.05 is not required. Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. § 50746, 50771 (Aug. 21, 2000) (interpreting the word "manifested" as used in Listing 12.05 to include "the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period.")

The ALJ did not apply the rebuttable presumption that absent evidence of sudden trauma that can cause retardation, the IQ tests indicate a fairly constant IQ throughout one's life. Because there is no evidence of trauma that could have caused Petitioner's mental retardation, the ALJ must apply this presumption. Once the presumption is properly applied, it can be rebutted with evidence to the contrary. This does not however switch the burden to the Commissioner, the claimant still must prove entitlement to benefits at step three. *See Hodges v. Barnhart*, 276 F.3d 1265 (11th Cir. 2001). Once the ALJ has addressed this rebuttable presumption, he can then address Listing 12.05(C) as a *whole*, including whether Petitioner has another physical or other mental impairment imposing an additional and significant work-related limitation of function.

**Memorandum Decision and Order - Page 9**

**B.     Listing 1.04(A) - Disorders of the Spine**

Petitioner also argues that the ALJ's decision that he does not meet the requirements of Listing 1.04(A) is not supported by substantial evidence. Listing 1.04(A) states:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
With:
A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. Petitioner submits that an MRI conducted in January 2005 and corresponding treatment notes indicate he satisfies this Listing. (AR 226, 234, 241, 275-76.) Petitioner also contends that his treating nurse practitioner, Babette Munting, has offered the opinion that Petitioner satisfies Listing 1.04(A). (AR 243.)

The ALJ found that no objective evidence satisfied any of the requirements under Listing 1.04(A), (B), or (C). (AR 28.) As to Petitioner's argument that the ALJ incorrectly read the requirement of "inability to ambulate effectively" into Listing 1.04(A), it seems the ALJ was not referring to 1.04(A) when discussing that requirement but rather to 1.04(C) in which "inability to ambulate effectively" *is* a requirement.[4] Therefore, Petitioner's argument fails.

The ALJ's finding that Petitioner does not meet Listing 1.04(A) is supported by substantial evidence in the record. One of the requirements of this Listing is compromise of nerve root with nerve root compression. The only document in the record that Petitioner refers to in support of such a finding is the MRI taken in January 2005. The MRI findings showed

---

[4] Listing 1.04(C) has the same introductory paragraph as 1.04(A) and then states: "Lumber spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

**Memorandum Decision and Order - Page 10**

minimal compression upon existing L3 nerve root. (AR 226, 227.) The ALJ reviewed all the evidence and found it was not sufficient to support a 1.04(A) Listing. This is supported by substantial evidence in the record.

Also, there is other evidence in the record that supports this finding by the ALJ. There were several discrepancies between the record and what Petitioner testified to at the hearing. *See Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) ("credibility determinations do bear on evaluations of medical evidence..."). There was evidence in the record that Petitioner rode his bike, went fishing and camping, pulled weeds, and could walk a mile. (AR 32, 105, 109, 110, 275.) At the hearing, Petitioner denied he took part in these activities and that he could not even walk one block. (AR 333.) Petitioner testified he did not take any pain medication for this severe pain he claimed to be in but the record shows that in January 2005 he was taking medication. (AR 141, 330-31.)

Additionally, it is unnecessary, as a matter of law, to require the ALJ to state why a claimant failed to satisfy every different section of a listing. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). In that case, the court found that the statement "evaluation of the evidence" was adequate in finding a Listing was not satisfied. *Id*. The ALJ was not required to state explicitly why Petitioner did not equal Listing 1.04(A).

At step three, the burden is on Petitioner to prove he meets a Listing and is per se disabled. The medical evidence fails to support such a finding. The ALJ's finding that Petitioner did not meet Listing 1.04(A) is supported by substantial evidence and Petitioner did not meet his burden to show otherwise.

### 1. Opinion of Nurse Practitioner

Within his Listing 1.04(A) argument, Petitioner also argues that the ALJ improperly rejected the opinion of Babette Munting, his treating nurse practitioner who opined that Petitioner met Listing 1.04(A).  (AR 243.)  This "opinion" of Ms. Munting is in the form of a check-list and although Petitioner argues to the contrary, she did not find that Petitioner met the listing.  The box for "neuro-anatomic distribution of pain," one of the requirements for Listing 1.04(A), was left un-checked.  (AR 243.)

In his decision, the ALJ stated he did not give significant weight to her opinion, in part because as a nurse practitioner, she is not an "acceptable medical source" but considered under "other sources," the same category as educational and welfare personnel and family and friends. *See* 20 C.F.R. § 404.1513.  An ALJ may reject the testimony of an "other source" by providing reasons germane to that witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  *See also Hensley v. Barnhart*, 352 F.3d 353 (8th Cir. 2003).

The ALJ met this standard in rejecting Ms. Munting's opinion.  The ALJ sufficiently summarized the medical record and discussed the medical evidence, the findings and treatment notes of various physicians and other sources, Petitioner's daily activities, Petitioner's testimony, and inconsistencies therein.  (AR 29-33.)   The ALJ stated that Ms. Munting's opinion was inconsistent with the objective evidence and with the opinions of other medical providers and experts.  (AR 33.)  Such inconsistencies are sufficient reasons for rejecting her opinion.  *See Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005.)

## V.
## Conclusion

Based on its review of the entire record, the Court finds it necessary for this matter to be remanded to the Commissioner of the Social Security Administration.  In accordance with this decision, the Commissioner must reevaluate whether Petitioner satisfies Listing 12.05(C) and in doing so, apply the presumption discussed.

## **ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Plaintiff's Petition for Review (Docket No. 1) is GRANTED.

2)      This action shall be REMANDED to the Commissioner for review in accordance with this order.

3)      This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).



DATED: September 12, 2007

_____
Honorable Mikel H. Williams
Chief United States Magistrate Judge